**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| SAMUEL TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-CV-8-SRW |
| | ) | |
| DANIEL REDINGTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of plaintiff Samuel Taylor, an inmate at the

Northeast Correctional Center ("NECC"), for leave to commence this civil action without

prepaying fees or costs. Having reviewed the motion and the financial information submitted in

support, the Court has determined to grant the motion, and assess an initial partial filing fee of

$1.73. Additionally, the Court has determined that the complaint fails to state a claim upon which

relief may be granted, and will therefore dismiss this action at this time.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is

required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison

account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial

filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account,

or (2) the average monthly balance in the prisoner's account for the prior six-month period. After

payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20

percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The

agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted a certified inmate account statement showing an average monthly deposit of $8.64 and an average monthly balance of $6.78. The Court will therefore assess an initial partial filing fee of $1.73, which is twenty percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

This Court is required to review a complaint filed *in forma pauperis*, and must dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S at 556). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678

(citing *Twombly,* 550 U.S. at 555). "[M]aterials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint." *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (quoting *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)). *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse the mistakes of those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff is a frequent *pro se* and *in forma pauperis* litigant in this United States District Court, and in the United States District Court for the Western District of Missouri. According to plaintiff's allegations in the instant complaint, he has also filed civil actions in the Missouri state courts. Plaintiff filed the complaint pursuant to 42 U.S.C. § 1983 against the following five Missouri Department of Corrections ("MDOC") employees: Warden Daniel Redington, Director of Finance Ashley Meyer, Business Manager Barbie Finley, Caseworker Manager J. Borderwick, and Function Unit Manager Unknown Henderson. Plaintiff sues all of the defendants in their individual capacities.

3

The complaint is typewritten on a court-provided form, and plaintiff's statement of claim is clearly and logically set forth in numbered paragraphs. The allegations in the complaint focus primarily upon allegedly wrongful debits from plaintiff's inmate account. According to the complaint, plaintiff had outstanding federal and state court filing fee debts, and his inmate account was debited to pay them.  Plaintiff alleges as follows.

In February of 2020, Finley debited plaintiff's inmate account by $.27, and each month thereafter debited it by $1.80 "because the State Statute for collecting fees are unclear." (ECF No. 1 at 4). Next, plaintiff alleges that in April of 2020, the Missouri Innocence Project asked him to send them "all criminal documents relating to" his incarceration, but he lacked sufficient stamps to mail such documents "because the Defendants Henderson and Borderwick and Redington would not provide to me the stamps" and "all of my monies were being taken to pay court filing fees." *Id.* Plaintiff was unable to send the documents "until 2021 and I was prejudice[d] from the intentional delay of sending [l]egal documents off being the case is so old."  *Id.* at 4-5. Plaintiff does not allege he needed to send any documents in a criminal appeal, postconviction matter, or civil rights action. In fact, plaintiff does not identify any particular case or proceeding at all. Plaintiff also fails to describe the prejudice he claims to have suffered.

In June 2020, plaintiff filed a "nonfrivolous replevin/conversion lawsuit" against two NECC officials. *Id.* at 5. Plaintiff writes: "Because the two Defendants did not show up at court heari[]ng set for March 2020 the judge dismissed the case." *Id.*  Plaintiff alleges nothing further about the matter. Also in June 2020, plaintiff worked as a NECC law clerk, but Finley and Meyer debited his earnings to pay his federal and state court filing fee debts. Plaintiff complained, and was told the debits were made to pay his court filing fee debts. Plaintiff then writes: "I had mentioned that I did not have enough monies to purchase stationery and hygienic products. Neither

Defendant provided to me soap, paper, ink pens, stamps, envelopes to draft legal documents when my inmate account becomes completely depleted." *Id.* Plaintiff alleges nothing further.

Plaintiff avers he was fired from his job in October of 2020, and then alleges: "I had requested from Daniel Redington, Ashley Meyer, Barbie Finley, J. Borderwick, and Henderson and I repeatedly requested hygiene products. My teeth became rotten and one tooth had to be extracted and the others needed fillings. I repeatedly requested to be provided with hygienic and stationery products with no help." *Id.* Plaintiff alleges that "after five (5) months of being deprived of hygienic and stationery products," Borderwick began giving plaintiff monthly care packages containing hygiene supplies. *Id.* Plaintiff complains that the care packages were insufficient, and writes: "Neither would J. Borderwick, Henderson, Ashley Meyer, Barbie Finley, or Daniel Redington refused to provide to me ink pens, envelopes, stamps, or paper to draft legal documents to my then nonfrivolous lawsuits which frusted [*sic*] and impeded me from access to the courts and I was prejudice[d] from not being provided statione[]ry products." *Id.*

Plaintiff received a "government stimulus check" in March of 2021, but Meyer and Finley debited plaintiff's account to pay his outstanding court filing fee debts, leaving him with only $60.00. *Id.* at 6.  Plaintiff received another government stimulus check in May of 2021 and Meyer and Finley again debited his account to pay court filing fees, leaving plaintiff with $900.00. Plaintiff claims: "The stimulus monies were not suppose[d] to pay for outstanding debts but to help the family members out financially." *Id.*

On two occasions in May of 2021, plaintiff purchased songs from JPay. The first purchase was 100 songs for $180.00, and the second purchase was an unspecified number of songs for $50.00. Plaintiff writes: "The only reason Plaintiff put that much money on JPay media account was to stop the Defendants from extracting all of Plaintiff's stimulus monies." *Id.*  After some of

5

his song purchases failed to download, plaintiff submitted a "Trouble Ticket" to JPay. JPay

responded with instructions to download the music to plaintiff's tablet, but the instructions were

not helpful. Plaintiff complains that his grievance was denied, and he still has not received all of

his music purchases. Plaintiff speculates that Redington is in possession of the songs, and he states

he is being denied "life, liberty or property without the due process of law." *Id.* at 7.

> Next, plaintiff references all of the foregoing allegations, and writes:

> 13)   [the above-described wrongdoing] violates Plaintiff['s] First, Eighth, and
> Fourteenth Amendment rights to the Constitution in retaliation to redress
> grievances and lawsuits. The Defendants conspired to direct themselves toward an
> unconstitutional action by virtue of a mutual understanding. The deprivation of
> stationery and hygienic products for inordinately long periods of time was
> objectively, sufficiently serious, resulting in the denial of the minimal civilized
> measure of life's necessities, and that the Defendants were deliberate indifference
> to an excessive risk to Plaintiff's health and safety.

> 14)   Plaintiff engaged in a protected activity; (2) that the Defendants responded
> with adverse action that would chill a person of ordinary firmness from continuing
> in the activity, and (3) that the adverse action was motivated for the exercise of the
> protected activity.

*Id.* Plaintiff seeks monetary relief.

Plaintiff provides an attachment in which he specifies that this action is "a civil rights action

authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights

secured by the constitution of the United States," and to raise State-law claims of replevin and

conversion, and intentional infliction of emotional distress. (ECF No. 1-4 at 1-2).

Also attached are copies of grievance materials plaintiff filed at NECC. The majority of

the grievance materials document plaintiff's complaints of allegedly wrongful debits from his

inmate account to pay outstanding court filing fee debt. The materials also reflect that plaintiff

repeatedly asked to be given stationery supplies and occasionally asked to be given hygiene

supplies, but the materials do not reflect persistent complaints of a lack of hygiene supplies. For

example, an Informal Resolution Request ("IRR") plaintiff filed on August 12, 2020 indicates that he complained that he needed stationery supplies and hygiene supplies, including toothpaste, toothbrush, and soap, and it indicates that the hygiene supplies were provided to him. The IRR also indicates that plaintiff was told why he did not qualify to receive the stationery supplies. Similarly, a "Warden's Response" dated October 21, 2020 indicates that plaintiff was given hygiene supplies, including toothpaste, a toothbrush, and a razor, on October 20, 2020, and that he did not meet eligibility requirements for such assistance the preceding month. It further indicates that all offenders are given two bars of soap per week, and that plaintiff could receive legal supplies upon his submission of a qualified legal claim.

In other grievance materials, plaintiff complained that JPay did not give him all of the songs he paid for. The responses indicate that JPay is an outside vendor, NECC officials were not responsible for any financial loss caused by JPay, and JPay had its own grievance procedure. Also attached are copies of pages from a NECC procedure manual concerning media services.

Plaintiff also filed a motion for preliminary injunction in which he avers he "was intentionally deprived by the Respondents of being allowed to appeal State civil cases denying Movant access to the court and deprivation of hygienic products in violation of the Eighth Amendment being deprived of civilized measures of life's necessities being deliberate indifference to Movant's health and safety." (ECF No. 5 at 1). Plaintiff does not identify the "State civil cases" to which he refers, nor does he identify any particular misconduct on the part of any particular defendant. It appears that the injunctive relief he seeks is for "Defendants" to stop debiting his inmate account "to pay court filing fees," and "issue to Plaintiff stationery products: soap, toothpaste, toothbrush, ink pens, paper, envelopes, etc." *Id.* at 5.

**Discussion**

7

Plaintiff claims he is entitled to relief because his institutional account was wrongfully debited for the purpose of paying his existing state and federal court filing fee debts. Having thoroughly reviewed and liberally construed plaintiff's allegations, the Court concludes they fail to state a claim upon which relief may be granted.

Plaintiff does not allege that the any state or federal court filing fee debts for which his account was debited were wrongfully imposed, nor does he allege he did not voluntarily incur the debts. Instead, plaintiff first asserts that in February of 2020, Finley debited $.27 from his account, and each month thereafter debited $1.80 "because the State Statute for collecting fees are unclear." (ECF No. 1 at 4). However, allegations of a lack of clarity in state law do not establish a violation of a right secured by the Constitution or laws of the United States, as necessary to state a claim under 42 U.S.C. § 1983. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff also alleges that after he was hired as a NECC law clerk in June of 2020, Meyer and Finley repeatedly debited his wages from his account to pay his outstanding court filing fee debts, leaving him with no money. These allegations do not state a cognizable claim for relief. *See Bruce v. Samuels*, 136 S. Ct. 627, 62 (2016) (holding that the *in forma pauperis* statute calls for simultaneous, not sequential, recoupment of multiple filing fees incurred by an indigent prisoner, and recognizing that a prisoner who had filed five actions could exhaust his prisoner account each month). To the extent plaintiff can be understood to allege that Meyer and/or Finley wrongfully failed to leave a minimum amount of money in his account in accordance with a prison rule or policy, he fails to state a claim of constitutional dimension. *See Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability).

Plaintiff also claims that after he received economic stimulus payments from the federal government in March and May of 2021, Meyer and Finley debited some of the money from his

8

account to pay his outstanding court filing fee debts. Plaintiff alleges that violated his federally-protected rights because "[t]he stimulus monies were not suppose[d] to pay for outstanding debts but to help the family members out financially." (ECF No. 1 at 6).  These allegations fail to demonstrate entitlement to relief. Plaintiff does not identify, nor is the Court aware, of any authority exempting income from federal stimulus payments from collection to pay outstanding court filing fee debts. Other district courts that have considered the issue have declined to exempt such income from collection to pay court filing fees.  *See Hayes v. Graves*, 2022 WL 822881 *6 (E.D. Ar. Mar. 16, 2022) (no due process violation when federal stimulus funds were used to pay off existing court fees and costs); *Hill v. Cook*, 2021 WL 1178209 *2 (D. Ct. Mar. 29, 2021) (observing that if the inmate had received an economic stimulus payment under the CARES Act, or the American Rescue Plan Act of 2021, such funds would enable him to pay the PLRA's required filing fee).

Additionally, the Court finds the Eighth Circuit's decision in *Mahers v. Halford* instructive on this issue. 76 F.3d 951 (8th Cir. 1996). In *Mahers*, the Eighth Circuit addressed the issue of what process was due before money an inmate received from outside sources could be debited to pay his restitution debts. The *Mahers* Court noted that by the time the funds were deducted from the inmates' accounts, the inmates had received a trial or a plea hearing, and had the opportunity to be heard concerning their ability to pay restitution.  *Id.* at 955.  Once the restitution plan was established, "a debt was created and the inmate was deprived of complete freedom over how to spend future money until this debt was satisfied." *Id.*

Here, plaintiff's allegations establish that because he voluntarily filed civil litigation in state and federal court, he became responsible for paying court filing fees.  Debts were thereby created, and plaintiff was "deprived of complete freedom over how to spend future money" until

9

such debts are satisfied. *Id. Mahers* instructs that this is all the process that is due. Therefore, plaintiff's allegations that Meyer and/or Finley debited his federal stimulus funds to pay his existing state and federal court filing fees fails to establish the violation of a federally-protected right, and therefore fails to state a valid 42 U.S.C. § 1983 claim. Plaintiff does not specifically allege that any other defendant took any action related to his inmate account. For all of the foregoing reasons, the Court concludes that plaintiff's allegations concerning the debits made to his institution account fail to state a claim under 42 U.S.C. § 1983.

Plaintiff also claims he is entitled to relief because he was not provided with hygiene supplies. Having thoroughly reviewed and liberally construed plaintiff's allegations, the Court concludes they fail to state a plausible Eighth Amendment claim.

Under the Eighth Amendment, prisoners are entitled to humane treatment, and to the basic necessities of life. *Goff v. Menke*, 672 F.2d 702, 705 (8th Cir. 1982). The Eighth Circuit has recognized that inmates are entitled to "reasonably adequate" personal hygiene, "particularly over a lengthy course of time." *Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir. 1989) (citations omitted). *See Meyers v. Hundley,* 101 F.3d 542, 544 (8th Cir. 1996) (noting that the "long-term, repeated deprivation of adequate hygiene supplies violates inmates' Eighth Amendment rights.").

A prison official can be held liable for violating the Eighth Amendment when two requirements are met. First, a plaintiff must show that the alleged deprivation was sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This requirement is met if the alleged deprivation denied plaintiff "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Next, a plaintiff must show that the defendant acted with deliberate indifference, meaning that the defendant actually knew of, and deliberately disregarded,

10

an excessive risk to his health or safety. *Farmer*, 511 U.S. at 834; *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995).

In this case, the complaint contains no facts permitting the inference that plaintiff was subjected to a long-term denial of reasonably adequate hygiene.  Plaintiff claims he was given a care package after being deprived of hygiene products for five months, and he alleges he was not given soap after he "mentioned" he had insufficient funds to buy "stationery and hygienic products."  (ECF No. 1 at 5). Plaintiff also lists the names of all five defendants and alleges he "repeatedly requested hygiene products," and he complains that the care packages he was given were insufficient. However, plaintiff fails to allege facts as basic as the length of time he went without any particular hygiene product, or how he was affected by the lack of any hygiene product. While plaintiff claims he suffered dental problems, he alleges no facts permitting the inference that they were related to the deprivation of hygiene supplies.  The Court concludes that plaintiff has failed to establish that he suffered a deprivation of sufficient severity, as necessary to state a plausible Eighth Amendment claim premised upon a deprivation of adequate hygiene.

Even if plaintiff had demonstrated a deprivation of sufficient severity, the complaint would fail to state a plausible Eighth Amendment claim against any defendant because plaintiff does not allege that any defendant actually knew of, and deliberately disregarded, an excessive risk to his health or safety.  *See Farmer*, 511 U.S. at 834; *Williams*, 49 F.3d at 445.  Instead, plaintiff references groups of defendants and offers vague assertions such as he "had mentioned" a lack of sufficient funds to buy hygiene products. (ECF No. 1 at 5).  "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in

11

or directly responsible for the incidents that deprived the plaintiff of his constitutional rights).  To the extent plaintiff can be understood to claim that any defendant is liable to him because he or she held an administrative or supervisory position, such claims are not cognizable in these proceedings. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (Claims sounding in *respondeat superior* are not cognizable under § 1983).

Plaintiff also claims he is entitled to relief because he was not provided with stationery supplies and stamps, and thereby was denied his right of access to the courts.  Having thoroughly reviewed and liberally construed plaintiff's allegations, the Court concludes they fail to state a plausible claim premised upon denial of access to the courts.

The Constitution guarantees prisoners a right to access the courts. *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007) (citing *Murray v. Giarratano*, 492 U.S 1, 11 n. 6 (1989)).  A prisoner asserting a claim of violation of his right of access to the courts must establish an "actual injury" in order to prevail on a § 1983 claim premised on that right.  *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996); *Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001) (citing *Klinger v. Dept. of Corrections*, 107 F.3d 609, 617 (8th Cir. 1997)).

"Actual injury" means "that a nonfrivolous legal claim had been frustrated or was being impeded" by defendants' failure to maintain an adequate law library or to provide adequate legal assistance.  *Lewis*, 518 U.S. at 352–53; *Moore*, 266 F.3d at 933 (quoting *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998)).  The Eighth Circuit has recognized that, when bringing an access to courts claim, it is insufficient to merely allege a denial of resources, even if the denial is systemic. *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (per curiam) (citing *Lewis*, 518 U.S. 343). Instead, the plaintiff must plead (and ultimately prove) that the lack of resources deprived him of some specific opportunity to defend himself, or advance a viable legal claim, in a criminal

appeal, postconviction matter, or civil rights action seeking to vindicate constitutional rights. *Id.*

Speculation that injuries might occur or could have occurred is insufficient. *See Hartsfield v.*

*Nichols*, 511 F.3d 826, 833 (8th Cir. 2008). "Absent an articulation of how the alleged wrongful

conduct actually blocked [the prisoner's] access to filing a complaint, or caused a filed complaint

to be deficient, [the prisoner's] alleged injuries are merely speculative." *Id.*

In this case, plaintiff alleges he was unable to send documents to the Missouri Innocence

Project because he lacked stamps. However, he does not allege that a lack of stamps deprived him

of an opportunity to defend himself or advance a viable legal claim in a criminal appeal,

postconviction matter, or civil rights action.  Plaintiff also alleges that a lack of stationery supplies

left him unable "to draft legal documents to my then nonfrivolous lawsuits which frust[rat]ed and

impeded me from access to the courts and I was prejudice[d] from not being provided stationery

products." (ECF No. 1 at 5). However, plaintiff does not attempt to identify or even quantify the

"nonfrivolous lawsuits" to which he refers, nor does he attempt to describe the prejudice he

suffered.  Instead, he offers wholly conclusory allegations that are not entitled to the presumption

of truth.  *See Iqbal*, 556 U.S. at 678 (to state a claim for relief, a complaint must plead more than

"legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are]

supported by mere conclusory statements").

Because plaintiff fails to articulate how the alleged wrongful conduct deprived him of some

specific opportunity to defend himself, or advance a viable legal claim, in a criminal appeal,

postconviction matter, or civil rights action, he fails to state a plausible access to courts claim. *See*

*Sabers*, 100 F.3d at 84, *Hartsfield*, 511 F.3d at 833. Plaintiff also fails to allege facts demonstrating

any defendant's personal involvement or direct responsibility for any allegedly wrongful conduct,

as necessary to demonstrate any defendant's liability under § 1983.  *See Madewell*, 909 F.2d at 1208, *Martin*, 780 F.2d at 1338.

Next, plaintiff claims he is entitled to relief because he bought songs from JPay in May of 2021, but not all of the songs downloaded. He claims he tried to resolve the issue through JPay and was given instructions about how to download the songs, but was unable to do so.  He alleges that Redington "is in possession of Plaintiff's music purchases and monies and emails because Plaintiff have been deprived of life, liberty, or property without the due process of law." (ECF No. 1 at 7).  However, plaintiff alleges no facts permitting the inference that Redington or any other defendant engaged in any act or omission that deprived him of any property, or that they currently possess his property.  Instead, they establish that he made a purchase from a non-party, and the non-party failed to deliver everything he purchased. Such allegations do not state a valid due process claim, or any other claim of constitutional dimension, against Redington or any other defendant. As noted above, "[l]iability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell*, 909 F.2d at 1208. S*ee Martin*, 780 F.2d at 1338.

Plaintiff also states, in a wholly conclusory fashion, that the defendants conspired against him, and retaliated against him. However, plaintiff's statements are the sort of legal conclusions and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements" that are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at  678 (citing *Twombly,* 550 U.S. at 555). Finally, to the extent plaintiff can be understood to claim that Redington or any other defendant is liable to him for failing to adequately address his grievances, such allegations fail to state a claim of constitutional dimension. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

Therefore, for all of the foregoing reasons, the Court concludes that the complaint fails to state a claim upon which relief may be granted, and is subject to dismissal. The Court does not believe leave to amend should be given, as it is clear that the claims plaintiff wishes to bring are not cognizable or viable under 42 U.S.C. § 1983. The Court will therefore dismiss this action at this time pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court will deny as moot plaintiff's motion to appoint counsel, and his motion seeking injunctive relief. Finally, because plaintiff's federal claims will be dismissed, any supplemental state claims that plaintiff can be understood to bring are also dismissed.  *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S 715, 726 (1966) (if federal claims are dismissed before trial, remaining state claims should also be dismissed); *Crest Construction II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (where all federal claims have been dismissed, district court's decision to decline supplemental jurisdiction over state claims is "purely discretionary").

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion seeking leave to commence this action without prepaying fees or costs (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that, within thirty (30) days of the date of this order, plaintiff must pay an initial filing fee of $1.73.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice.  A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Appoint Counsel (ECF No. 4) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Preliminary Injunction (ECF No. 5) is **DENIED** as moot.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

Dated this 8th day of June, 2022.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE